IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DONNA PORTER,<br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant. | §<br>§<br>§<br>§   CIVIL ACTION NO. 4:22-CV-96-P<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Donna Porter ("Porter") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In April 2020, Porter protectively applied for DIB, alleging that her disability began on September 30, 2019. (Transcript ("Tr.") 16; *see* Tr. 179-80.) Porter's application was both denied initially and on reconsideration. (Tr. 16; *see* Tr. 101-06, 113-16.) Porter then requested a hearing before an administrative law judge ("ALJ"). (Tr. 16; *see* Tr. 117-18.) On April 22, 2021, the ALJ held a hearing, and, on June 1, 2021, the ALJ issued a decision finding that Porter was not disabled within the meaning of the SSA. (Tr. 16-27; *see* Tr. 32-69.) Porter then filed a request for review of

1

the ALJ's decision to the Appeals Council. (Tr. 176-78.) On December 8, 2021, the Appeals Council denied Porter's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

In her brief, Porter presents the following issues:

1. Whether the ALJ erred in finding that Porter did not medically require the use of a hand-held assistive device;

2. Whether Nancy Berryhill ("Berryhill"), the Acting Commissioner of the Social Security Administration, lacked the statutory authority under the Federal Vacancy Reform Act ("FVRA") to ratify the appointment of the ALJ in this case; and

3. Whether the Social Security Administration denied Porter a constitutionally valid hearing.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 6-24.)

## IV. ALJ DECISION

In a decision dated June 1, 2021, the ALJ concluded that Porter was not disabled within the meaning of the SSA. (Tr. 16-27.) At Step One, the ALJ found that Porter had not engaged in substantial gainful activity since September 30, 2019, her alleged onset date, and that Porter met the insured status requirements of the SSA through December 31, 2024. (Tr. 18.) At Step Two, the ALJ found that Porter had the following severe impairments: "breast cancer and lymphedema syndrome, status post mastectomy; degenerative disc disease of the cervical spine, status post anterior cervical discectomy and fusion (ACDF); degenerative joint disease bilateral knees; and obesity." (Tr. 18 (emphasis omitted).) Next, at Step Three, the ALJ determined that Porter did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 20-22.) As to Porter's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following: the claimant can frequently climb ramps and stairs, and occasionally climb ladders, rope, or scaffolds. The claimant can frequently stoop, kneel, crouch, and crawl.

(Tr. 22 (emphasis omitted); *see* Tr. 22-26.)

At Step Four, the ALJ found that Porter was able to perform her past relevant work as a customer service representative and computer technician. (Tr. 26.) Accordingly, the ALJ found that Porter was not disabled as defined in the SSA from September 30, 2019 through the date of the decision. (Tr. 26.)

## V. DISCUSSION

### A. RFC and Hand-Held Assistive Device

The first issue is whether the ALJ erred in finding that Porter did not medically require the use of a hand-held assistive device. (Pl.'s Br. at 1, 6-10.) In her brief, Porter points to evidence in the record indicating, *inter alia*, that she had difficulty walking, that she had a cane because her therapist told her to get one, and that she had an "imbalance ambulating." (Pl.'s Br. at 7.) Porter further claims:

> Here the ALJ never asked . . . [the Vocational Expert ("VE")] about the need for a can for ambulation or station. But on cross-examination the [VE] testified Porter's past relevant work "require[s] bilateral, bimanual dexterity in terms of handling, reaching, and fingering. And it's listed on a constant basis meaning two-thirds or more of an eight-hour day." Sedentary as defined by the regulations involves sitting generally for 6 hours and occasionally (meaning from very little up to one-third of the time) standing and walking. If Porter had to use a cane while standing or walking, presumably in one hand, for up to one-third of the time that would preclude her ability to use the bilateral hands for two-thirds or more of the time.
>
> As actually performed Porter's [sic] would be precluded. Porter explained her past relevant work as a customer service representative required her to "write, type, or handle small objects" for "6" totally hours per day. Porter also reported she had to stand and walk for a combined 4 hours. If the ALJ therefore accepted Porter's need to use a hand-held assistive device while standing or ambulating Porter could not perform work that "requires bilateral, bimanual dexterity in terms of handling, reaching, and fingering" while holding her cane in one hand. The same is true for her work as a major incident manager which required standing or walking for three combined hours per day.
>
> As generally performed Porter's work could be precluded. Here it would have been "useful to consult a vocational resource" about the effect on the work as generally performed. The [VE] testified bilateral manual dexterity is required for two-thirds of the day or more. Two-thirds of the day is 5.33 hours. But here the [VE] testimony creates a conflict since "more" could allow for the possibility that

5

these jobs required 6, 7, or even 8 hours of bilateral and bimanual dexterity during a work-day. "Conflicts in the evidence are for the [ALJ] and not the courts to resolve."

(Pl.'s Br. at 8-10 (footnotes omitted).)

RFC is what an individual can still do despite his limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

*See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

As set forth above, the ALJ found that Porter had the RFC to perform sedentary work except that she could frequently climb ramps and stairs and stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, or scaffolds. (Tr. 22.) The ALJ did consider Porter's need to ambulate with a cane as the ALJ specifically mentioned in her decision that "[t]he claimant reported to using a cane." (Tr. 22.) In addition, the ALJ, *inter alia*, stated:

> The claimant alleged to have great difficulty with lifting, squatting, bending, standing, sitting, reaching, walking, kneeling, climbing stairs, and in using hands. Despite these allegations, the evidence indicates she maintains the ability to perform numerous tasks including attending to her personal care needs, preparing meals on the stove, performing light household duties, including washing dishes and doing laundry with breaks, watching TV, reading daily, driving a car, going outside, managing finances, paying bills, and spending time with family and others (Hearing Testimony & Ex. 4E; 7E). . . .
>
> . . . .
>
> In addition, the claimant was noted to have pain issues in the neck, back, and knees with some degenerative changes noted in the joints. Treatment notes in 2020 indicated degenerative disc disease of the cervical spine and the claimant was status post ACDF surgery and degenerative joint disease of the bilateral knees. However,

7

there is a lack of imaging studies or diagnostic studies to suggest greater limitations. And, exam findings indicate relatively intact functioning that would not be expected of someone who was more limited. For instance, physical examinations reflected that the claimant had improved motor strength, resolved numbness in the extremities, mild difficulty with balance, stable hardware, a normal gait, full motor strength in the extremities, good range of motion, no significant neurological deficits, and she did not appear to need an assistive device in order to ambulate (Ex. 4F/6, 21, 23-24, & 6F/71-74, 105). In addition, the claimant was recommended to go to physical therapy, in which she was noted to have gait issues following spine surgery, and muscle weakness, but she had improved range of motion, no numbness, and minimal swelling. The claimant was also noted in late 2020, to have a normal gate and can get up from sitting or standing without assistance. She has to slow down to stabilize her gait prior to walking, but was considered stable overall. The absence of significant musculoskeletal or neurological findings is not suggestive of the claimant being substantially limited. . . . Other treatment notes in early 2021 also indicated issues in the lower extremities with swelling due to lymphedema, but she appeared to have improved symptoms with medical management and therapy treatment. . . .

. . . .

Taken as a whole, the general lack of significant musculoskeletal and neurological abnormalities, the imaging studies showing relatively minor positive findings, and the claimant's response of her physical pain symptoms with medical management and monitoring throughout the relevant period are inconsistent with the claimant's allegations. For these reasons, especially considering notations of stable conditions, but also considering her breast cancer and lymphedema syndrome, status post mastectomy; degenerative disc disease of the cervical spine, status post ACDF; degenerative joint disease of the bilateral knees; and obesity signs and symptoms, and the effect they can have on musculoskeletal functioning, the claimant is limited to, but can perform work at the sedentary exertional level, except frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and frequently stoop, kneel crouch, and crawl. She does not require an assistive device, as she usually has had normal gait with 5/5 motor strength in her bilateral lower extremities and there is a lack of notations about the claimant using an assistive device (e.g., Ex. 4F/6, 21, 23-24; 6F/71, 74). Further, to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (SSR 96-9p). In this case, medical evidence of record does not substantiate the claimant's requirement for the use of a handheld assistive device.

(Tr. 22-25.)

Based on the foregoing, it is clear that the ALJ considered Porter's use of a cane in formulating the RFC even though the extent of her mobility issues was inconsistent throughout the

8

record. While there is evidence in the record, as pointed out by Porter, that Porter was instructed to buy a cane at one session of her physical therapy sessions and was taught to use the device at the next session, the ALJ cited to and was aware of such evidence. (*See, e.g.,* Tr. 23 (citing to Ex. 4F/6 and 5F/12-13; *see* Tr. 1959, 2121-22.) The ALJ also noted more recent evidence indicating, *inter alia*, that Porter had normal gait and could get up from sitting and standing without assistance. (Tr. 23.) Ultimately, based on all the evidence in the record, the ALJ found that Porter did not require the use of a handheld assistive device and, consequently, did not incorporate such limitation into the RFC determination.[4] The ALJ, as the Court noted above, is not required to incorporate limitations into his RFC assessment that are not supported by the record, and he alone has the responsibility to determine which limitations are sufficiently supported. *Muse*, 925 F.2d at 790. Because the ALJ specifically considered Porter's use of a cane and incorporated appropriate limitations into the RFC based on the entire evidence in the record regarding Porter's ability to ambulate, the ALJ did not err and remand is not required. *See, e.g., Bivens v. Saul*, No. 3:20-CV-1904-K-BH, 2022 WL 869687, at *11 (N.D. Tex. Mar. 7, 2022) ("Because the records were inconsistent as to whether [claimant] used a cane to ambulate and do not show that the cane was medically necessary, Plaintiff failed to meet her burden to show that she required a cane to ambulate."), *rec. adopted*, 2022 WL 865903 (N.D. Tex. Mar. 22, 2022).

---

[4] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." Social Security Ruling ("SSR") 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996).

### B. Statutory Authority under FVRA

The next issue is whether Berryhill, the Acting Commissioner of the Social Security Administration at the time the ALJ that issued the decision in this case was appointed, lacked the statutory authority under the FVRA to ratify the appointment of ALJs in 2018. In her brief, Porter spends over eight pages arguing why Berryhill lacked such authority and, consequently, the case must be remanded for a new hearing as the ALJ was not properly appointed and lacked authority to hear Porter's claim. (Pl.'s Br. at 10-18; *see also* Plaintiff's Reply Brief at 1-8.) However, at least four district courts in the Fifth Circuit have already considered such issue and determined that the ALJs were properly appointed. *See Spain v. Soc. Sec. Admin.*, No. 21-2367, 2023 WL 1786722, at *4-7 (E.D. La. Jan. 18, 2023), *rec. adopted*, 2023 WL 1779186 (E.D. La. Feb. 6, 2023); *Boller v. Comm'r, SSA*, No. 4:21-CV-01001-SDJ-CAN, 2022 WL 18586837, at *7 (E.D. Tex. Dec. 12, 2022), *rec. adopted*, 2023 WL 1765909 (E.D. Tex. Feb. 3, 2023); *Watts v. Kijakazi*, No. 21-2044, 2022 WL 18109797, at *10-15 (E.D. La. Nov. 18, 2022), *rec. adopted*, 2023 WL 35799 (E.D. La. Jan. 3, 2023); *Silva v. Kijakazi*, No. 2:21-CV-00301, 2022 WL 18144262, at *6-7 (S.D. Tex. Oct. 5, 2022), *rec. adopted*, 2023 WL 123789 (S.D. Tex. Jan. 5, 2023). Based on the reasoning set forth by these district courts to the extent applicable to the facts and arguments raised in this case, the Court finds and concludes that Berryhill had the statutory authority to ratify all appointments in 2018; thus, the ALJ in this case was properly appointed and Plaintiff's argument is without merit.

### C. Separation of Powers Clause

The final issue raised by Porter is whether the Social Security Administration denied Porter a constitutionally valid hearing. (Pl.'s Br. at 1, 18-24.) Porter, in essence, challenges the constitutionality of the authority of the ALJ and the Commissioner to determine Porter's disability claims on the grounds that the statute governing appointment of the Commissioner limits the removal authority of the President, thereby violating the separation of powers clause. (Pl.'s Br. at

18-24.) Once again, several district courts in this Circuit (including at least two in this district) have already considered this issue and found, *inter alia*, that, while the removal provision in 42 U.S.C. § 902(a)(3) violates the separation of powers, that provision is severable, and, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case. *See, e.g.*, *Boller*, 2022 WL 18586837, at *4-6; *Hebert v. Saul*, No. 21-185-SDD-EWD, 2022 WL 4581035, at *8-10 (M.D. La. Sept. 9, 2022), *rec. adopted*, 2022 WL 4543178 (M.D. La. Sept. 28, 2022); *Halter o/b/o Halter v. Comm'r, SSA*, No. 4:21-CV-00262-SDJ-CAN, 2022 WL 7353200, at *8-10 (E.D. Tex. July 22, 2022), *rec. adopted*, 2022 WL 4587845 (E.D. Tex. Sept. 29, 2022); *Pamela Joyce B. v. Kijakazi*, No. 1:21-CV-00087-H-BU, 2022 WL 3161941, at *8-10 (N.D. Tex. July 21, 2022), *rec. adopted*, 2022 WL 3159273 (N.D. Tex. Aug. 8, 2022); *Smith v. Kijakazi*, No. 21-1240, 2022 WL 2980905, at *8-10 (E.D. La. July 11, 2022), *rec. adopted*, 2022 WL 2967470 (E.D. La. July 27, 2022); *Payne-Dillon v. Kijakazi*, No. 21-532, 2022 WL 10713798, at *12-14 (E.D. La. June 29, 2022), *rec. adopted*, 2022 WL 4115943 (E.D. La. Sept. 9, 2022); *Garza v. Kijakazi*, No. 3:21-CV-0826-M-BH, 2022 WL 2759849, at *9-10 (N.D. Tex. June 21, 2022), *rec. adopted*, 2022 WL 2757629 (N.D. Tex. July 14, 2022); *Hughes v. Kijakazi*, No. 20-2374, 2022 WL 1256704, at *18-21 (E.D. La. Mar. 9, 2022), *rec. adopted*, 2022 WL 1238628 (E.D. La. Apr. 26, 2022). Based on the reasoning set forth in these cases to the extent applicable to the facts and arguments in this case, the Court finds and concludes that Porter has not shown any particularized harm, and, consequently, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be **AFFIRMED.**

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 15, 2023** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 1, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv